**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Nathaniel Lewis,   Case No. 3:10CV2549

        Plaintiff

   v.   **ORDER**

City of Toledo, et al.,

        Defendant

This is a Fourth Amendment § 1983 suit (with supplemental state claims) in which the plaintiff, Nathaniel Lewis, claims Officer Diane Chandler of the Toledo, Ohio, Police Department intentionally drove her cruiser into him as she and other officers were apprehending him. Plaintiff has sued Officer Chandler, claiming excessive force, and the City of Toledo, claiming a failure of its duty to train Officer Chandler in the proper use of a police vehicle during a police/pedestrian pursuit.

Pending is defendants' motion for summary judgment. (Doc. 25). For the reasons that follow, I grant the motion on its merits with regard to plaintiff's federal claims. I grant it without prejudice to plaintiff's right to refile his state law claims in state court, as I decline to exercise supplemental jurisdiction over plaintiff's those claims.

**Background**

Plaintiff was a passenger in a stolen car. On January 28, 2010, sometime after around 4:00 p.m., officers observed the car, stopped it and then pursued it after its driver, Quentin Kenny, drove away. Kenny drove the car into a building and he and plaintiff "bailed." Officers pursued on foot.

On learning of the incident from the dispatcher, Officer Chandler headed toward the scene. Plaintiff was running northbound; Officer Chandler was southbound on the same street. Plaintiff headed into an adjacent parking lot, followed by another cruiser that had followed him as he was running north.

Officer Chandler turned into the parking lot. She was traveling at about twenty-five MPH. (Doc. 36-6, pg. 8, line 12-25). As she entered the lot, the back of the other cruiser obscured her view. (*Id*. pg. 12, line 7-19). She struck plaintiff. She did not see the plaintiff until he was in front of her car. (*Id*., pg. 9, line 3-6). One to two seconds elapsed between the time Officer Chandler turned into the lot and her striking him. (*Id*., pg. 6, line 3-6).

She had turned into the lot because she saw plaintiff trying to evade the other officers. (*Id*., pg. 7, line 15). There was a hill that plaintiff could "easily have run up to avoid" capture by other officers. (*Id*., pg 14, line 2-4).

Though the street was clear, snow and slush were on the gravel surface of the lot. (*Id.*, pg. 6, line 9-11). Officer Chandler testified as soon as she saw the plaintiff, she braked and tried to swerve to avoid hitting him. Her cruiser continued straight. (*Id*., pg. 11, line 5-10).

On being hit, plaintiff went into the air, striking his head on and cracking the cruiser's windshield.

Gregory Rose, at a garage across the street, provided an affidavit. He stated that he saw a cruiser as "it attempted to block [plaintiff] by pulling into a driveway." (Doc. 36-3, ¶ 10). He then saw Officer Chandler's cruiser coming from the opposite direction "at a high rate of speed towards the driveway where [plaintiff] was standing and the other cruiser was stopped. As Officer Chandler's cruiser got closer to the driveway, Rose "saw it make a quick turn . . . into the driveway without

slowing down or without making any attempt to brake." He "saw no brake lights on [Officer Chandler's] cruiser when it made the turn into the driveway." The next thing he saw was Officer Chandler's cruiser hit the plaintiff. In Rose's opinion, Officer Chandler "could have avoided hitting" the plaintiff. (*Id.* ¶¶ 11-15).

Another witness at the body shop, Michael Wymer, stated in his affidavit that he saw a cruiser "attempt to block the fleeing [plaintiff] by pulling into a driveway" to the parking lot. He then saw Officer Chandler "coming at a high rate of speed" towards the plaintiff and make "a quick turn . . . into the driveway, driving very fast, intentionally running down [plaintiff] who was at this point standing because he had been stopped by the other police vehicle who had blocked him from the other side of the driveway." Officer Chandler "at no point appeared to have lost control or slide due to any road conditions at the scene." (Doc. 36-2, ¶¶ 12-14).

A third witness, Roosevelt Riley, stated he had passed plaintiff as he was driving southbound and plaintiff was running north with a police officer chasing him on foot. He saw a cruiser block plaintiff's path. Then he saw Officer Chandler's vehicle coming "at a high rate of speed" and striking the plaintiff. He estimated Chandler's speed at about thirty-five to forty-five mph. (Doc. 36-4, ¶¶ 4, 6-8).

Riley also stated that Office Chandler "could have avoided hitting [plaintiff]. It appeared to me that [Officer Chandler] intentionally hit [plaintiff]." *Id.* ¶ 10.

Plaintiff claims on the basis of these affidavits that Officer Chandler struck him intentionally (for purposes of his § 1983 claims) or, at least, recklessly (for purposes of his supplemental state claims).

**Discussion**

3

Plaintiff's allegations of excessive force during the course of a detention invoke the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment."). With reference to circumstances such as those in this case,

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original).

Courts applying *Brower* to § 1983 cases involving fleeing suspects struck by police vehicles require the plaintiff to prove the officer intended to seize him by striking him with the vehicle. Thus, as stated in *Campbell v. White*, 916 F.2d 421, 423 (7th Cir.1990):

> there is no evidence whatsoever to suggest that White intended physically to stop or detain Campbell by running over him with his car in the event Campbell refused to pull over voluntarily. The collision between White and Campbell was not 'the means intentionally applied' to effect the stop, but was rather an unfortunate and regrettable accident.

*See also Evans v. Hightower*, 117 F.3d 1318, 1321 (11th Cir.1997) (plaintiff produced no evidence that officers' actions in striking plaintiff with their vehicle were intended to seize the plaintiff); *Kelley v. City of Southfield*, 2007 WL 1343265, *3 (E.D.Mich.2007) (no "seizure" where officer did not intend to physically stop or detain decedent by running over or striking him with patrol car); *Hand v. Village of Brooklyn*, 2005 WL 1420748, *4 (S.D.Ill.2005) (no evidence that officer intended to physically stop or detain decedent by running over him with police cruiser).

From the record, it is clear that the officers, including Officer Chandler, were seeking to capture the plaintiff by corralling him, or boxing him in. Plaintiff does not dispute Officer Chandler's testimony that, just before she struck him, the other cruiser blocked her view of him. Or that, therefore, she was not aware that she was about to hit him until just before she did so.

The affidavits plaintiff offers do not create an issue of fact sufficient to overcome defendants' motion for summary judgment as to his federal claims. While two of the affiants assert Officer Chandler intended to hit the plaintiff, and the other states she could have avoided doing so, their testimony is not admissible. *See, e.g., Yancey v. Carson*, 2007 WL 3088232, *5 (E.D.Tenn.) (expert testimony about a party's intent in shooting another inadmissible).

The only issue of *fact* which the affidavits put in dispute is whether Officer Chandler braked before hitting the plaintiff. Even if, contrary to her testimony, she did not do so, that alone is insufficient to enable a rational trier of fact to find by a preponderance of the evidence that she intended to strike the plaintiff as she was joining other officers seeking to capture him.

There being no cognizable § 1983 claim against Officer Chandler, there can be no derivative liability § 1983 against the City of Toledo.

**Conclusion**

This decision relates only to plaintiffs' § 1983 claims. I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

In light of the foregoing, it is hereby

ORDERED THAT:

1. Defendants' motion for summary judgment (Doc. 25) be, and the same hereby is granted as to plaintiff's federal claims; and

2. Defendants' state law claims be, and the same hereby are dismissed without prejudice, with a right to refile in state court.

So ordered.

/s/ James G. Carr
Sr. United States District Judge